﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 190722-16144
DATE: April 30, 2020

ORDER

Entitlement to service connection for a left foot disability, diagnosed as left foot plantar and calcaneal spurs and pes planus, is granted.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by restless leg syndrome is denied.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by chronic fatigue syndrome is denied.

Entitlement to an initial compensable evaluation for bilateral hearing loss from October 9, 2018 to June 18, 2019 is denied.

Entitlement to an initial evaluation in excess of 10 percent for degenerative disc disease (DDD) and degenerative joint disease (DJD) of the lumbar spine from October 9, 2018 to June 18, 2019 is denied.

REMANDED

Entitlement to service connection for a left knee disability is remanded.

Entitlement to service connection for a right knee disability is remanded.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by gastrointestinal symptoms, to include irritable bowel syndrome (IBS), is remanded.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by left shoulder muscle and joint pain is remanded.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by right shoulder muscle and joint pain is remanded.

Entitlement to service connection for an undiagnosed Gulf War illness manifested by respiratory symptoms, to include obstructive airway disease/bronchial asthma and respiratory insufficiency, is remanded.

FINDINGS OF FACT

1. Resolving all reasonable doubt in favor of the Veteran, the evidence is at least in equipoise that his currently diagnosed left plantar and calcaneal spurs and pes planus are etiologically related to his active duty service.

2. The preponderance of the evidence demonstrates that the Veteran does not have an undiagnosed illness or a medically unexplained chronic multi-symptom illness manifested by restless leg syndrome; nor does the evidence demonstrate that the Veteran has a current diagnosis for restless leg syndrome. 

3. The preponderance of the evidence demonstrates that the Veteran does not have an undiagnosed illness or a medically unexplained chronic multi-symptom illness manifested by chronic fatigue syndrome; nor does the evidence demonstrate that the Veteran has a current diagnosis for chronic fatigue syndrome.

4. From October 9, 2018 to June 18, 2019, the Veteran has, at worst, Level I in the right ear and Level I in the left ear.

5. From October 9, 2018 to June 18, 2019, the Veteran’s DDD and DJD of the lumbar spine does not more closely approximate forward flexion greater than 30 degrees but not greater than 60 degrees, a combined range of motion greater than 120 degrees or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a left foot disability, diagnosed as left plantar and calcaneal spurs and pes planus, have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for entitlement to service connection for an undiagnosed Gulf War illness manifested by restless leg syndrome have not been met. 38 U.S.C. §§ 1110, 1117, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.317.

3. The criteria for entitlement to service connection for an undiagnosed Gulf War illness manifested by chronic fatigue syndrome have not been met. 38 U.S.C. §§ 1110, 1117, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.317.

4. The criteria for entitlement to an initial compensable evaluation for bilateral hearing loss from October 9, 2018 to June 18, 2019 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.85, Diagnostic Code 6100.

5. The criteria for entitlement to an initial evaluation in excess of 10 percent for DDD and DJD of the lumbar spine from October 9, 2018 to June 18, 2019 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Navy from September 1993 to May 1997, from January 2006 to December 2006, from November 2008 to April 2010, from January 2011 to March 2012, and from August 2012 to August 2013.

On February 19, 2019, the new modernized decision review system created by the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA), went into effect. Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017). This law creates a new framework for appellants dissatisfied with VA’s decision on their claim to seek review. 

These matters are before the Board of Veteran’s Appeals (Board) on appeal from a June 2019 AMA rating decision that considered the evidence of record on that date. The Veteran timely appealed this decision to the Board by requesting the AMA Evidence Submission option. The Evidence Submission option only permits the Board to review the evidence that: (a) was of record at the time of the Agency of Original Jurisdiction (AOJ) decision on appeal; (b) was submitted by the appellant or his or her representative with the VA Form 10182 Decision Review Request: Board Appeal (Notice of Disagreement); or (c) was submitted within 90 days following VA’s receipt of the VA Form 10182. This decision has been written consistent with the new AMA framework. 

In the June 2019 rating decision, the RO, in pertinent part, granted service connection for DDD and DJD of the lumbar spine and assigned a 10 percent evaluation, effective October 9, 2018; granted service connection for bilateral hearing loss and assigned a noncompensable evaluation, effective October 9, 2018; and denied service connection for chronic fatigue syndrome, IBS, left foot pain, left knee pain, left shoulder muscle and joint pain, restless leg syndrome, right knee pain, right shoulder muscle and joint pain, and obstructive airway disease/bronchial asthma. The Veteran appealed for higher initial evaluations and service connection. 

Relevant to this appeal, in a July 2019 rating decision, the Veteran was also granted service connection for sleep apnea and left ankle lateral collateral ligament sprain. 

Evidence was added to the claims file during a period of time when new evidence was not allowed.  Therefore, the Board may not consider this evidence.  38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence.  38 C.F.R. § 3.2501.  If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered.  Id.  Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Generally, service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Further, because the Veteran served in Southwest Asia from February 2006 to November 2006, from April 2011 to November 2011, and from November 2012 to June 2013, service connection may also be established on a presumptive basis for a Persian Gulf War Veteran who exhibits objective indications of a qualifying chronic disability that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more no later than December 31, 2021, and cannot be attributed to any known clinical diagnosis by history, physical examination, or laboratory tests. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1); see also DD Form 214. 

The term "Persian Gulf Veteran" means a veteran who served on active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e)(1). The "Southwest Asia theater of operations" refers to Iraq, Kuwait, Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2). The Persian Gulf War means the period beginning on August 2, 1990, and ending on the date thereafter prescribed by Presidential proclamation or by law. 38 U.S.C. § 101(33); 38 C.F.R. § 3.3(i). On that basis, the Board finds that the Veteran qualifies as a Persian Gulf War Veteran within the meaning of the applicable statute and regulation.

A qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): (A) An undiagnosed illness; (B) A medically unexplained chronic multi-symptom illness that is defined by a cluster of signs or symptoms, such as: (1) Chronic fatigue syndrome; (2) Fibromyalgia; (3) Functional gastrointestinal disorders (excluding structural gastrointestinal diseases). 38 C.F.R. § 3.317(a)(2)(i). 

For purposes of this presumption, the term "medically unexplained chronic multi-symptom illness" means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi-symptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered "medically unexplained." 38 C.F.R. § 3.317(a)(2)(ii).

Signs or symptoms that may be manifestations of an undiagnosed illness or medically unexplained chronic multi-symptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317(b). 

Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period are considered chronic. The six-month period of chronicity is measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4).

In the case of claims based on an undiagnosed illness under 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Further, lay persons are considered competent to report objective signs of illness. Id.

Compensation shall not be paid under 38 C.F.R. § 3.317 for a chronic disability: (1) if there is affirmative evidence that the disability was not incurred during active military, naval, or air service in the Southwest Asia theater of operations; or (2) if there is affirmative evidence that the disability was caused by a supervening condition or event that occurred between the Veteran's most recent departure from active duty in the Southwest Asia theater of operations and the onset of the disability; or (3) if there is affirmative evidence that the disability is the result of the Veteran's own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317(a)(7).

Notwithstanding the provisions relating to presumptive service connection, a Veteran may establish service connection for a disability with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

1. Entitlement to service connection for a left foot disability

The Veteran contends that his left foot disability arises out of the same repeated “rolling” injuries he sustained during active duty service that caused his service-connected left ankle lateral collateral ligament strain. 

The question before the Board is whether the Veteran’s current left foot disability is etiologically related to active duty service. Based on a careful review of all the subjective and clinical evidence, and resolving reasonable doubt in favor of the Veteran, his currently diagnosed left plantar and calcaneal spurs and pes planus were etiologically related to active duty service. 

The Veteran has a current diagnosis for left plantar and calcaneal spurs and pes planus. See January 2019 VA examination. 

In an August 2018 private evaluation, the private physician found that the Veteran’s left foot had similar symptomatology and dysfunction to his left ankle. Further, upon an objective evaluation, the private physician found that the Veteran’s left foot examination mirrored his left ankle examination. The private physician diagnosed the Veteran with posttraumatic residual DJD of the left foot complicated by instability. 

At a January 2019 VA examination, the VA examiner noted that the Veteran reported having left ankle and left foot pain during active duty service associated with repeated “rolling” injuries. Upon an objective evaluation, the VA examiner diagnosed the Veteran with left plantar and calcaneal spurs and pes planus. The VA examiner found that pes planus and plantar/calcaneal spurs are diseases with clear and specific etiologies and diagnoses. The VA examiner opined that presently there was not a clearly defined relationship between said conditions and his remote Southwest Asia exposures. No etiological opinion was provided that addressed whether the Veteran’s left foot disability was otherwise etiologically related to service, to include his reported in-service “rolling” injuries. 

Nevertheless, in a June 2019 VA opinion, the VA examiner opined that the Veteran’s left ankle disability was at least as likely as not incurred in or caused by active duty service. In that regard, the June 2019 VA examiner relied on the findings that the Veteran sought VA treatment in June 2014 for ongoing ankle pain with intermittent left ankle pain, soreness, and swelling; that this treatment occurred within 12 months of separation from the Veteran’s last period of active duty in August 2013, and the complaints indicated a longstanding or chronic nature of the complaint or condition. Given those findings, the June 2019 VA examiner concluded that the Veteran’s left ankle disability was at least as likely as not due to, a result of, or had its onset during an active duty service period. Subsequently, the Veteran was granted service connection for left ankle lateral collateral ligament sprain. See July 2019 rating decision. 

Notably, the evidence shows that at that same June 2014 VA clinic visit, the Veteran also reported having similar chronic left foot problems. 

Taking into account the totality of the evidence, the Board finds that the Veteran’s report that the onset of his left foot problems coincided with the onset of his left ankle problems, that he asserted his “rolling” injuries during service caused both his left foot and left ankle problems, and that he sought treatment for both his left foot and left ankle in June 2014, which was less than a year from his discharge from service, and described his symptoms as chronic. The evidence that substantiated the Veteran’s left ankle service connection claim is the same evidence supporting his left foot service connection claim. Overall, the Board finds that the evidence is at least in equipoise that his current left foot disability is etiologically related to his active duty service. 

In summary, resolving all reasonable doubt in favor of the Veteran, his currently diagnosed left plantar and calcaneal spurs and pes planus are etiologically related to service. Therefore, the Veteran’s service connection claim for a left foot disability must be granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to service connection for an undiagnosed Gulf War illness manifested by restless leg syndrome

The Veteran asserts that his restless leg syndrome developed due to his in-service exposure to environmental hazards in Southwest Asia. 

The question before the Board is whether the Veteran has an undiagnosed illness, a medically unexplained chronic multi-symptoms illness, or a current diagnosis for restless leg syndrome. Based on a careful review of all the subjective and clinical evidence, the preponderance of the evidence weighs against finding service connection for an undiagnosed Gulf War illness manifested by restless leg syndrome is warranted. 

As previously noted above, the Veteran served in Southwest Asia during the presumptive period for Gulf War illness. See DD Form 214. Additionally, he reported being exposed to environmental hazards, including smoke from oil fire, smoke from burning trash or feces, JP8 or other fuels, solvents, industrial pollution, sand or dust, vehicle or truck exhaust fumes, and industrial pollution. See January 2006 and October 2006 Post-Deployment Health Assessments. 

The Veteran’s service treatment records do not document any findings related to any complaints, treatment, or diagnosis for any symptoms related to restless leg syndrome. 

The Board notes that the record includes conflicting medical evidence as to whether the Veteran has a current diagnosis for restless leg syndrome. With regard to the medical opinions obtained, as with all types of evidence, it is the Board’s responsibility to weigh the conflicting medical evidence to reach a conclusion as to the ultimate grant of service connection. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Board may favor the opinion of one competent medical expert over another if its statement of reasons and bases is adequate to support that decision. Owens v. Brown, 7 Vet. App. 429, 433 (1995). Stated another way, the Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300 (2008).

According to an August 2018 private evaluation, the private physician diagnosed the Veteran with restless leg syndrome, but did not identify any underlying symptoms or objective findings associated with the diagnosis. The Board finds that the August 2018 private physician’s diagnosis is not based on any clinical evaluation of the Veteran’s current symptomatology or a discussion of the basis for the diagnosis. Thus, the Board finds that the August 2018 private physician’s diagnosis has little probative value. 

At a January 2019 VA examination, the VA examiner noted that at an August 2014 sleep study, the Veteran displayed no periodic limb movements of sleep. Reports of aching in the Veteran’s calves with prolonged sitting were associated with significant back pain. Upon objective evaluation, the VA examiner found that the Veteran did not have muscle weakness in the lower extremities or any muscle atrophy attributable to a central nervous condition. Overall, the VA examiner concluded that there was no objective evidence of restless leg syndrome on the present examination or in the available medical records. Because the January 2019 VA examiner conducted an interview of the Veteran, discussed the review of his medical records, and provided a documented report of the clinical findings, the Board finds that the January 2019 VA examiner provides the most probative evidence regarding whether the Veteran has a diagnosis for restless leg syndrome. 

Initially, the Board notes that the Veteran’s restless leg syndrome does not qualify as an undiagnosed illness or a medically unexplained chronic multi-symptom illness under 38 C.F.R. § 3.317. Therefore, presumptive service connection for restless leg syndrome is not warranted. 

Additionally, the Board finds that the evidence does not support a clinical diagnosis for restless leg syndrome. The most probative evidence reveals that no underlying disability has been clinically diagnosed during the appeal period or proximate thereto. McClain v. Nicholson, 21 Vet. App. 319 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013).

While the Veteran is certainly competent to report his history of symptoms associated with restless leg syndrome, he has not demonstrated that he has the requisite specialized knowledge or training to diagnose restless leg syndrome. Notably, the Veteran’s lay reports do not show any symptoms that could be associated with restless leg syndrome. Layno v. Brown, 6 Vet. App. 465, 470 (1994); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Veteran has not presented any competent and credible evidence of a current diagnosis for restless leg syndrome, and the available evidence does not support that the Veteran has any persistent symptomatology that would suggest that he has an underlying chronic disability. Accordingly, the Veteran’s assertions that he has a diagnosis for restless leg syndrome have little probative value. 

In summary, the preponderance of the evidence weighs against finding in favor of the Veteran’s service connection claim for an undiagnosed Gulf War illness manifested by restless leg syndrome. Therefore, the benefit-of-the-doubt rule does not apply, and the service connection claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

3. Entitlement to service connection for an undiagnosed Gulf War illness manifested by chronic fatigue syndrome

The Veteran asserts that his chronic fatigue syndrome developed due to his in-service exposure to environmental hazards in Southwest Asia. 

The question before the Board is whether the Veteran has an undiagnosed illness, a medically unexplained multi-symptom illness, or a current diagnosis for chronic fatigue syndrome. Based on a careful review of all the subjective and clinical evidence, the preponderance of the evidence weighs against finding service connection for an undiagnosed Gulf War illness manifested by chronic fatigue syndrome is warranted. 

As previously noted above, the Veteran served in Southwest Asia during the presumptive period for Gulf War illness, and he was reportedly exposed to environmental hazards. 

The Veteran’s service treatment records document complaints in September 1993 of the Veteran’s having general malaise and myalgia that were attributed to his diagnosis for viral syndrome. There were no further documented complaints or treatment for malaise or fatigue. 

The Board notes that the record includes conflicting medical evidence as to whether the Veteran has a current diagnosis for chronic fatigue syndrome. With regard to the medical opinions obtained, as with all types of evidence, it is the Board’s responsibility to weigh the conflicting medical evidence to reach a conclusion as to the ultimate grant of service connection. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Board may favor the opinion of one competent medical expert over another if its statement of reasons and bases is adequate to support that decision. Owens v. Brown, 7 Vet. App. 429, 433 (1995). Stated another way, the Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300 (2008).

According to an August 2018 private evaluation, the private physician diagnosed the Veteran with chronic fatigue syndrome, but did not identify any underlying symptoms or objective findings associated with the diagnosis. The Board finds that the August 2018 private physician’s diagnosis is not based on any clinical evaluation of the Veteran’s current symptomatology or a discussion of the basis for the diagnosis. Thus, the Board finds that the August 2018 private physician’s diagnosis has little probative value. 

At a January 2019 VA examination, the VA examiner discussed that a review of Veteran’s medical records revealed no objective evidence indicating a diagnosis of chronic fatigue syndrome or complaints of fatigue. Further, the VA examiner noted that the Veteran denied having post-activity fatigue. Reports of irregular sleep were attributed to the Veteran’s shift work. Upon an objective evaluation, the VA examiner determined that there was no objective evidence of chronic fatigue syndrome noted on the present examination, and there was evidence found in the available medical records of a diagnosis for chronic fatigue syndrome. Overall, the VA examiner found that the Veteran did not meet the criteria for chronic fatigue syndrome. Because the January 2019 VA examiner conducted an interview of the Veteran, discussed the review of his medical records, and provided a documented report of the clinical findings, the Board finds that the January 2019 VA examiner provides the most probative evidence regarding whether the Veteran has a diagnosis for chronic fatigue syndrome. 

Initially, the Board notes that the Veteran’s chronic fatigue syndrome does not qualify as an undiagnosed illness or a medically unexplained chronic multi-symptom illness under 38 C.F.R. § 3.317. Therefore, presumptive service connection for chronic fatigue syndrome is not warranted. 

Additionally, the Board finds that the evidence does not support a clinical diagnosis for chronic fatigue syndrome. The most probative evidence reveals that no underlying disability has been clinically diagnosed during the appeal period or proximate thereto. McClain v. Nicholson, 21 Vet. App. 319 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013).

While the Veteran is certainly competent to report his history of symptoms associated with chronic fatigue syndrome, he has not demonstrated that he has the requisite specialized knowledge or training to diagnose chronic fatigue syndrome. Notably, the Veteran’s lay reports do not show any symptoms that could be associated with chronic fatigue syndrome. Layno v. Brown, 6 Vet. App. 465, 470 (1994); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Veteran has not presented any competent and credible evidence of a current diagnosis for chronic fatigue syndrome, and the available evidence does not support that the Veteran has any persistent symptomatology that would suggest that he has an underlying chronic disability. Accordingly, the Veteran’s assertions that he has a diagnosis for chronic fatigue syndrome have little probative value. 

In summary, the preponderance of the evidence weighs against finding in favor of the Veteran’s service connection claim for an undiagnosed Gulf War illness manifested by chronic fatigue syndrome. Therefore, the benefit-of-the-doubt rule does not apply, and the service connection claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Higher Evaluation

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

Because the level of disability may have varied over the course of the claim, the rating may be "staged" higher or lower for segments of time during the period under review in accordance with such variations. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). In initial-rating cases, where the appeal stems from a granted claim of service connection with respect to the initial evaluation assigned, VA assesses the level of disability from the effective date of service connection. See Fenderson, 12 Vet. App. at 125; 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

Separate disability ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition was not “duplicative of or overlapping with the symptomatology” of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994). However, pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran’s service-connected disability. 38 C.F.R. § 4.14.

4. Entitlement to an initial compensable evaluation for bilateral hearing loss from October 9, 2018 to June 18, 2019

The Veteran generally asserts that his bilateral hearing loss is worse than his current evaluation reflects. 

From October 9, 2018 to June 18, 2019, the Veteran’s bilateral hearing loss has been currently evaluated as noncompensable, effective October 9, 2018, under 38 C.F.R. § 4.85, Diagnostic Code 6100. 

Evaluations of defective hearing are based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination testing together with the average hearing threshold level as measured by puretone audiometric tests in the frequencies 1000, 2000, 3000, and 4000 Hertz (Hz). To evaluate the degree of disability from defective hearing, the rating schedule requires assignment of a Roman numeral designation, ranging from I to XI. Other than exceptional cases, VA arrives at the proper designation by mechanical application of Table VI, which determines the designation based on results of standard test parameters. Table VII is then applied to arrive at a rating based upon the respective Roman numeral designations for each ear. Where impaired hearing is service connected in only one ear, the non-service connected ear will be assigned a Roman numeral I for rating purposes. 38 C.F.R. § 4.85, Diagnostic Code 6100.

Under 38 C.F.R. § 4.86, when the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hz) is 55 decibels (dB) or more, the rating specialist will determine the Level designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately. Further, when the average puretone threshold is 30 dB or less at 1000 Hertz, and 70 dB or more at 2000 Hz, the rating specialist will determine the Level designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher level. Each ear will be evaluated separately. 38 C.F.R. § 4.86(b).

In January 2019, the Veteran underwent a VA audiological examination. The result of puretone thresholds testing were in the right ear at 1000, 2000, 3000, and 4000 Hz of 10, 25, 45 and 55 dB, respectively, for an average over the four frequencies of interest of 33.75 dB. Test results of puretone thresholds were in the left ear at 1000, 2000, 3000, and 4000 Hz of 15, 35, 40 and 35 dB, respectively, for an average over the four frequencies of interest of 31.25 dB. Speech audiometry revealed speech recognition scores of 100 percent in the right ear and 100 percent in the left ear. The results show that the Veteran does not have exceptional hearing in either ear as contemplated in 38 C.F.R. § 4.86. 

Application of 38 C.F.R. § 4.85 Table VI to the January 2019 measurements result in the assignment of Roman Numeral I in the right ear and Roman Numeral I in the left ear. A noncompensable evaluation is derived from the application of Table VII of 38 C.F.R. § 4.85. 

In Martinak v. Nicholson, 21 Vet. App. 447 (2007), the Court held that in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Id. at 455. Here, the January 2019 VA examiner found that the Veteran reported having difficulty hearing clearly. 

The Board has considered the Veteran’s statement that his bilateral hearing loss is worse than is contemplated by his current evaluation. However, in determining the actual degree of disability, an objective examination is most probative of the degree of the Veteran’s impairment. Furthermore, the opinions and observations of the Veteran alone cannot necessarily meet the burden imposed by the rating criteria under 38 C.F.R § 4.85, Diagnostic Code 6100 with respect to determining the severity of his service-connected bilateral hearing loss disability. Cf. Ingram v. Nicholson, 21 Vet. App. 232, 256-57 (2007) (“It is the pro se claimant who knows what symptoms he is experiencing and that are causing him disability,.... [and] it is the Secretary who knows the provisions of title 38 and can evaluate whether there is a potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission.”).

In summary, the preponderance of the evidence weighs against finding in favor of the Veteran’s initial compensable evaluation claim for bilateral hearing loss from October 9, 2018 to June 18, 2019. Therefore, the benefit-of-the-doubt rule does not apply, and the initial compensable evaluation claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

5. Entitlement to an initial evaluation in excess of 10 percent for DDD and DJD of the lumbar spine from October 9, 2018 to June 18, 2019

The Veteran generally asserts that his DDD and DJD of the lumbar spine is worse than his current evaluation reflects. 

From October 9, 2018 to June 18, 2019, the Veteran’s DDD and DJD of the lumbar spine has been currently evaluated as 10 percent disabling, effective October 9, 2018, under 38 C.F.R. § 4.71a, Diagnostic Code 5242. 

Diagnostic Code 5242 is evaluated under the General Rating Formula for Diseases and Injuries of the Spine, with or without symptoms such as pain, stiffness or aching in the area of the spine affected by residuals of injury or disease, the following ratings will apply: 

A 10 percent evaluation is appropriate where there is forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal contour; or, vertebral body contour fracture with loss of 50 percent or more of the height. 

A 20 percent evaluation is appropriate where there is forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent evaluation is appropriate for forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. 

A higher 50 percent evaluation is assigned for unfavorable ankylosis of the entire thoracolumbar spine. 

A 100 percent evaluation is assigned for unfavorable ankylosis of the entire spine.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees; extension is zero to 30 degrees; left and right lateral flexion are zero to 30 degrees; and left and right lateral rotation are zero to 30 degrees. See General Rating Formula for Diseases and Injuries of the Spine, Note 2.

Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. See General Rating Formula for Diseases and Injuries of the Spine, Note 1. 

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision, restricted opening of the mouth and chewing, breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia, atlantoaxial or cervical subluxation or dislocation; or neurological symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. See General Rating Formula for Diseases and Injuries of the Spine, Note 5.

Based on a careful review of all the subjective and clinical evidence, the Board finds that from October 9, 2018 to June 18, 2019, the Veteran’s DDD and DJD of the lumbar spine does not warrant a higher 20 percent evaluation under the General Rating Formula for Diseases and Injuries of the Spine. In other words, the Veteran’s DDD and DJD of the lumbar spine does not manifest forward flexion greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. At a January 2019 VA examination, the VA examiner found that range of motion testing revealed flexion at 90 degrees without pain, extension at 15 degrees with pain, right lateral flexion at 20 degrees with pain, left lateral flexion at 20 degrees with pain, right lateral rotation at 25 degrees with pain, and left lateral rotation at 25 degrees with pain. There was no additional loss of function or range of motion after repetitive use testing. Pain, weakness, fatigability, or incoordination did not significantly limit functional ability with repeated use over a period of time. The VA examiner explained that after examining the Veteran, listening to his complete history and current subjective complaints, combined with a review of the available records, she had no basis to offer additional losses of function during a flare-up particularly since range of motion varies with level of pain during a flare-up. See April 2019 VA addendum. No guarding or muscle spasm were found. Ankylosis was not found. There was no radiculopathy or any other neurologic abnormalities. The Board is sympathetic to the Veteran’s reports of constant back pain causing him to be unable to sit for no more than two hours and experiencing pain when standing and walking; however, there is no basis upon which to award a higher 20 percent evaluation for DDD and DJD of the lumbar spine under the General Rating Formula for Diseases and Injuries of the Spine. Therefore, the Board finds that the Veteran’s DDD and DJD of the lumbar spine is no more than 10 percent disabling. 

The Board has also considered whether a higher evaluation for DDD and DJD of the lumbar spine is warranted based on functional loss due to flare-ups. See DeLuca v. Brown, 8 Vet. App. 202, 206 (1995); see also 38 C.F.R. §§ 4.40, 4.45. Although the Veteran reported having flare-ups with sitting, standing, or walking, the April 2019 VA examiner found no evidence of functional loss with flare-ups. Given that the clinical findings showed that the Veteran’s spine revealed no associated symptoms and no additional limitation in range of motion or loss of function with either repeated use or flare-ups, the Board finds that the Veteran’s DDD and DJD of the lumbar spine is more consistent with a 10 percent evaluation.

In summary, the preponderance of the evidence weighs against finding in favor of the Veteran’s higher than 10 percent initial evaluation claim for DDD and DJD of the lumbar spine. Therefore, the benefit-of-the-doubt rule, and the higher initial evaluation claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

1. Entitlement to service connection for a left knee disability is remanded.

2. Entitlement to service connection for a right knee disability is remanded.

The issues of entitlement to service connection for a left knee disability and right knee disability are remanded to correct a duty to assist error that occurred prior to the June 2019 rating decision on appeal. The Veteran asserts that his left and right knee disabilities are related to active duty service. In an August 2018 private evaluation, a private physician diagnosed the Veteran with chronic DJD of the left knee complicated by lateral instability and chronic DJD of the right knee complicated by lateral instability. The private physician opined that the Veteran’s left and right knee disabilities were related to service, but no supporting rationale was provided. However, at a January 2019 VA examination, the VA examiner found that the Veteran’s currently diagnosed bilateral knee meniscal tear had no relationship to his remote Southwest Asia exposures. No etiological opinion was provided concerning direct service connection. Given the inadequate opinion provided by the August 2018 private physician and the January 2019 VA examiner, the Board finds that a remand is required to obtain a supplemental VA opinion addressing the etiology of the Veteran’s bilateral knee disabilities on a direct basis. 

3. Entitlement to service connection for an undiagnosed Gulf War illness manifested by gastrointestinal symptoms, to include IBS, is remanded.

The issue of entitlement to service connection for an undiagnosed Gulf War illness manifested by gastrointestinal symptoms, to include IBS, is remanded to correct a duty to assist error that occurred prior to the June 2019 rating decision on appeal. The Veteran asserts that his gastrointestinal disorder is related to his exposure to environmental hazards while serving in Southwest Asia. Currently, the record includes conflicting medical evidence as to whether the Veteran has a current diagnosis for a gastrointestinal disorder. In an August 2018 private evaluation, the private physician diagnosed the Veteran with IBS based on symptoms of intermittent constipation and diarrhea. However, at a January 2019 VA examination, the VA examiner found that the Veteran had no signs or symptoms attributable to a non-surgical non-infectious intestinal condition. Furthermore, the January 2019 VA examiner noted that the Veteran had no episodes of bowel disturbance with abdominal distress or exacerbations or attacks of an intestinal condition. Additionally, the January 2019 VA examiner found that there was no objective evidence to support a diagnosis for IBS. Although the August 2018 private physician provided a nexus opinion linking the Veteran’s IBS to service, the private physician did not provide a supporting rationale. Because the record includes conflicting medical evidence regarding whether the Veteran has a current diagnosis for a gastrointestinal disorder and does not include an adequate etiological opinion, the Board finds that the available competent evidence is insufficient to decide the claim. As the evidence suggests that the Veteran has a current diagnosis for a gastrointestinal disorder that may be related to his active duty service, a remand is required to confirm the Veteran’s diagnosis and provide a VA opinion to determine its etiology. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

4. Entitlement to service connection for an undiagnosed Gulf War illness manifested by left shoulder muscle and joint is remanded.

5. Entitlement to service connection for an undiagnosed Gulf War illness manifested by right shoulder muscle and joint pain is remanded.

The issues of entitlement to service connection for an undiagnosed Gulf War illness manifested by left shoulder muscle and joint and entitlement to service connection for an undiagnosed Gulf War illness manifested right shoulder muscle and joint pain are remanded to correct a duty to assist error that occurred prior to the June 2019 rating decision on appeal. The Veteran asserts that his left shoulder muscle and joint pain and right shoulder muscle and joint pain are related to his exposure to environmental hazards while serving in Southwest Asia. Currently, the record includes conflicting medical evidence as to whether the Veteran has a current diagnosis for a left shoulder disability and a right shoulder disability. In an August 2018 private evaluation, the private physician diagnosed the Veteran with generalized muscle and joint pain of the left shoulder involving the labrum and generalized muscle and joint pain of the right shoulder involving the labrum. Clinical findings were provided to support the diagnosis. A nexus opinion linking the Veteran’s left shoulder and right shoulder disabilities to service was provided, however, no supporting rationale was given. Contradictory findings were made by a January 2019 VA examiner, who noted the Veteran’s complaints of intermittent “snapping” of his bilateral shoulder after periods of rest. Upon an objective evaluation, the January 2019 VA examiner found no objective evaluation of a left or right shoulder condition. Because the record includes conflicting medical evidence regarding whether the Veteran has a current diagnosis for a left and right shoulder disability and does not include an adequate etiological opinion, the Board finds that the available competent evidence is insufficient to decide the claim. As the evidence suggests that the Veteran has a current diagnosis for left shoulder and right shoulder disabilities that may be related to his active duty service, a remand is required to confirm the Veteran’s diagnoses and provide a VA opinion to determine their etiology. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

6. Entitlement to service connection for an undiagnosed Gulf War illness manifested by respiratory symptoms, to include obstructive airway disease/bronchial asthma and respiratory insufficiency, is remanded.

The issue of entitlement to service connection for an undiagnosed Gulf War illness manifested by respiratory symptoms, to include obstructive airway disease/bronchial asthma and respiratory insufficiency, is remanded to correct a duty to assist error that occurred prior to the June 2019 rating decision on appeal. Currently, the record includes conflicting medical evidence as to whether the Veteran has a current diagnosis for a respiratory disorder. At an August 2018 private evaluation, the private physician diagnosed the Veteran with respiratory insufficiency to include dyspnea. Clinical findings were provided to support the diagnosis. A nexus opinion linking the Veteran’s respiratory insufficiency to include dyspnea was provided, however, no supporting rationale was given. Contradictory findings were made by a January 2019 VA examiner, who noted the Veteran’s complaints of dry cough with associated post-nasal drip, but found no objective evidence of asthma/obstructive airway disease or any other respiratory condition. Because the record includes conflicting medical evidence regarding whether the Veteran has a current diagnosis for a respiratory disorder and does not include an adequate etiological opinion, the Board finds that the available competent evidence is insufficient to decide the claim. As the evidence suggests that the Veteran has a current diagnosis for a respiratory disorder that may be related to his active duty service, a remand is required to confirm the Veteran’s diagnosis and provide a VA opinion to determine its etiology. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The matters are REMANDED for the following actions:

1. Obtain an addendum opinion by an appropriately qualified clinician concerning whether the Veteran’s current left knee and right knee disabilities are at least as likely as not related to his active duty service. 

In providing the above opinion, the examiner should address the Veteran’s reports concerning the onset and continuity of his left and right knee symptoms. Additionally, the examiner should address the August 2018 private evaluation. 

A complete rationale with discussion of medical literature for any opinion expressed must be provided. If an opinion cannot be expressed without resort to speculation, discuss why this is the case.

2. Obtain an opinion by an appropriately qualified clinician addressing the following:

(a.) Does the Veteran have a diagnosis for a gastrointestinal disorder?

(b.) If so, please specify and provide an opinion as to whether the Veteran’s gastrointestinal disorder is at least as likely as not related to his active duty service. 

(c.) If the Veteran does not have a diagnosis for a gastrointestinal disorder, are there objective signs and symptoms of gastrointestinal problems, which are manifestations of an undiagnosed illness or a medically unexplained chronic multi-symptom illness? If so, please specify. 

(d.) If the answer to (c) is yes, please identify whether there is a clear and specific etiology. 

In providing the above opinions, the examiner should address the Veteran’s in-service diagnosis for acute gastroenteritis in December 1994 and his post-service complaints of intermittent constipation and diarrhea. Moreover, the examiner should consider the Veteran reports of exposure to environmental hazards while serving in Southwest Asia. Additionally, the examiner should address the August 2018 private evaluation. 

A complete rationale with discussion of medical literature for any opinion expressed must be provided. If an opinion cannot be expressed without resort to speculation, discuss why this is the case.

3. Obtain an opinion by an appropriately qualified clinician addressing the following:

(a.) Does the Veteran have a diagnosis for a left shoulder disability and a right shoulder disability?

(b.) If so, please specify and provide an opinion as to whether the Veteran’s left and right shoulder disabilities are at least as likely as not related to his active duty service.

(c.) If the Veteran does not have a diagnosis for a left shoulder or right shoulder disability, are there objective signs and symptoms of left shoulder disability or right shoulder problems, which are manifestations of an undiagnosed illness or a medically unexplained chronic multi-symptom illness? If so, please specify.

(d.) If the answer to (c) is yes, please identify whether there is a clear and specific etiology.

In providing the above opinions, the examiner should address the Veteran’s in-service complaints of right shoulder pain in December 2006. Moreover, the examiner should consider the Veteran reports of exposure to environmental hazards while serving in Southwest Asia. Additionally, the examiner should address the August 2018 private evaluation. 

A complete rationale with discussion of medical literature for any opinion expressed must be provided. If an opinion cannot be expressed without resort to speculation, discuss why this is the case.

4. Obtain an opinion by an appropriately qualified clinician to address the following:

(a.) Does the Veteran have a diagnosis for a respiratory disorder?

(b.) If so, please specify and provide an opinion as to whether the Veteran’s respiratory disorder is at least as likely as not related to his active duty service.

(c.) If the Veteran does not have a diagnosis for a respiratory disorder, are there objective signs and symptoms of respiratory problems, which are manifestations of an undiagnosed illness or a medically unexplained chronic multi-symptom illness? If so, please specify.

(d.) If the answer to (c) is yes, please identify whether there is a clear and specific etiology.

In providing the above opinions, the examiner should address the Veteran’s in-service diagnoses for pharyngitis and an upper respiratory infection in 1994 and 1995. Moreover, the examiner should consider the Veteran reports of exposure to environmental hazards while serving in Southwest Asia. Additionally, the examiner should address the August 2018 private evaluation.

A complete rationale with discussion of medical literature for any opinion expressed must be provided. If an opinion cannot be expressed without resort to speculation, discuss why this is the case.

 

 

LESLEY A. REIN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Journet Shaw, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.